CLARA V. BALDWIN *vs.* HAROLD H. BALDWIN.

JUNE 30, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. In this case the petitioner brought a petition for divorce on the ground of extreme cruelty, whereupon the respondent filed a motion in the nature of a cross petition on the same ground. After a hearing in the superior court the trial justice denied and dismissed the wife's petition and granted that of the husband. The case is before us on her exceptions to that decision.

We will first consider the petition of the wife. It appears in evidence that the parties, both past middle age, were married September 20, 1946 in this state. The petitioner, who had been married and divorced, was a sister of respondent's deceased wife. Although a resident of Massachusetts she knew, through visits to her husband's home prior to her marriage, that he lived in a basement apartment of a house which he owned in Pawtucket. She further knew that in addition to his regular trade of paper hanger he also frequently worked late into the night at a different occupation. Nevertheless she married him. Trouble between them started shortly thereafter, her main complaints according to the evidence being: first, that the basement apartment was too hot in summer and damp in winter; and, secondly, that his incidental occupation kept him away from home too often at night. There was some testimony from her that he promised to move into one of the upper apartments, all of which were then rented, as soon as possible after their marriage; that he used abusive language to her; and that on a few occasions he hit her. This testimony was denied by the husband.

Petitioner further testified that her health had been impaired by the conditions under which she was obliged to live and that she had been treated by two doctors, one in Massachusetts and the other in Rhode Island. But neither

doctor testified in her behalf in person or by deposition; nor was such absence excused or explained in any way.

The petitioner's testimony was not supported by that of any other witness. The trial justice in denying and dismissing her petition plainly stated that he did not "place much credence in her testimony. She knew the respondent for 23 years — she knew his business and she knew the home she was going to. If she was not able to make a go of it, it wasn't the respondent's fault." From our consideration of the evidence we cannot say that his decision was clearly wrong.

The evidence in the respondent's case presents a very different situation. Generally speaking, he charged his wife with making continuous imaginary complaints, threats and aspersions expressed in vile language which, at times, was punctuated with assaults that required him to run away from her for self-protection. According to him, it made no difference to her whether they were alone or in public. Other than quoting the following question and answer we deem it unnecessary to refer to the evidence in greater detail. "Q. This talking and this cursing and swearing and fighting that you mentioned, has that affected your health? A. It hasn't done me any good. I haven't been myself for months. I am 56 years old."

The respondent was corroborated by a number of witnesses, among whom were neighbors, friends, relatives, and the person who employed him as a paper hanger. Some of these witnesses were questioned by the trial justice himself as to whether they entertained any prejudice against Mrs. Baldwin, and their respective answers in effect were that although friendly to her they were speaking the truth. In granting the husband's petition the trial justice made it clear that he believed him and his witnesses.

Extreme cruelty as a ground for divorce under the statute does not submit to a precise definition. Each case must therefore be determined upon its peculiar facts. Whether or not in the case at bar the petitioner was guilty of

extreme cruelty depended mainly on the credibility of the parties and of respondent's witnesses. This raised a question of fact for the trial justice to determine and his finding thereon will not be disturbed by this court unless clearly wrong. *Sayles* v. *Sayles,* 41 R. I. 170. We have examined the transcript and we find therein evidence which, although denied by the petitioner, fairly tended to prove various acts of actual and attempted physical violence by her towards the respondent in conjunction with a willful and designed course of conduct on her part well calculated to injure the respondent's health. Such evidence, if believed, would establish the charge of extreme cruelty under our decisions. *Sullivan* v. *Sullivan,* 68 R. I. 25; *Salvatore* v. *Salvatore,* 61 R. I. 109; *Grant* v. *Grant,* 44 R. I. 169. The trial justice who had the opportunity of weighing the value of the uncorroborated evidence of the petitioner on the one hand and the corroborated evidence of the respondent on the other, an advantage which we do not have, decided in unmistakable language that in his judgment the petitioner was guilty of extreme cruelty towards the respondent. From our examination of the evidence we cannot say that he was clearly wrong in his decision and therefore petitioner's exception thereto is overruled.

All of the petitioner's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*William R. Goldberg,* for petitioner.

*Joseph T. Witherow,* for respondent.